UNITED STATES v. ONE CASE, NO. 1,577.

(Circuit Court of Appeals, Second Circuit. June 19, 1916.)

No. 295.

1. CUSTOMS DUTIES ☞130—FRAUD ON CUSTOMS—FORFEITURE OF IMPORTS.

Where the consignee of laces, before entering them, raised the valuation recited in the consular invoice prepared by the foreign seller, and the laces were appraised at the increased price and duties paid on that basis, they cannot be seized, under Tariff Act Oct. 3, 1913, c. 16, § III, H, 38 Stat. 183 (Comp. St. 1913, § 5526), on the ground that the consignor and consignee had attempted to enter them under a false invoice, tending to deprive the United States of duties.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296–315; Dec. Dig. ☞130.]

2. CUSTOMS DUTIES ☞130—FRAUD ON CUSTOMS—INCREASE OF VALUATION.

Where the consignee, the importer of goods, increased the values recited in the consular invoice prepared by the exporter, and the goods were entered under such increased valuation, at which they were appraised, they cannot be forfeited, under Tariff Act Oct. 3, 1913, c. 16, § III, I, 38 Stat. 184 (Comp. St. 1913, § 5527), if the appraised value did not exceed the declared value by 75 per cent.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296–315; Dec. Dig. ☞130.]

In Error to the District Court of the United States for the Southern District of New York.

Proceeding by the United States for the forfeiture of one case of laces, etc., consigned to Cobden & Co. Forfeiture was denied, and the United States bring error. Affirmed.

H. Snowden Marshall, U. S. Atty., and J. E. Walker, Sp. Asst. U. S. Atty., both of New York City.

Arthur Mayer, of New York City, for defendant in error.

Before COXE and WARD, Circuit Judges, and CHATFIELD, District Judge.

---

WARD, Circuit Judge. The government filed this libel for the forfeiture of a case of laces seized by the collector, which was consigned by the owner, Brantvogel, in Germany to Cobden & Co. at New York. Subsection II of section III of the Tariff Act of October 3, 1913, 38 Stat. page 183 (Comp. St. 1913, § 5526), reads as follows:

"II. That if any consignor, seller, owner, importer, consignee, agent, or other person or persons shall enter or introduce, or attempt to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall make any false statement in the declarations provided for in paragraph F without reasonable cause to believe the truth of such statement, or shall aid or procure the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, or shall be guilty of any willful act or omission by means whereof the United States shall or may be deprived of the lawful duties or any portion thereof, accruing upon the merchandise or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from such person or persons, shall be forfeited, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates. That the arrival within the territorial limits of the United States of any merchandise consigned for sale and remaining the property of the shipper or consignor, and the acceptance of a false or fraudulent invoice thereof by the consignee or the agent of the consignor, or the existence of any other facts constituting an attempted fraud, shall be deemed, for the purposes of this paragraph, to be an attempt to enter such merchandise notwithstanding no actual entry has been made or offered."

The material chronology of the case is as follows: January 12, 1914, Brantvogel verified the consular invoice for the case in question at Plauen. January 17 he verified the consular invoice for another shipment of laces to John Wanamaker & Co. January 23 the General Appraiser raised the invoice values of some of the laces in previous shipments by Brantvogel. January 26 the steamer bringing this particular case arrived at New York. January 29 Cobden & Co., the consignees, increased the values of the invoice in question so as to make it conform to values fixed by the General Appraiser in the prior shipments and entered the goods in the custom house. January 30 Cobden & Co. paid duties on the amended invoice on which the laces were actually entered. February 6 the collector seized the case. February 13 the examiner passed Cobden & Co.'s amended invoice and entry as correct.

The claimant relied upon subsection I (section 5527), the material parts of which are as follows:

"I. That the owner, consignee, or agent of any imported merchandise may, at the time when he shall make entry of such merchandise, but not after either the invoice or the merchandise has come under the observation of the appraiser, make such addition in the entry to or such deduction from the cost or value given in the invoice or pro forma invoice or statement in form of an invoice, which he shall produce with his entry, as in his opinion may raise or lower the same to the actual market value or wholesale price of such merchandise at the time of exportation to the United States, in the principal markets of the country from which the same has been imported; and the collector within whose district any merchandise may be imported or entered,

whether the same has been actually purchased or procured otherwise than by purchase, shall cause the actual market value or wholesale price of such merchandise to be appraised; and if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry: * * * Provided, that if the appraised value of any merchandise shall exceed the value declared in the entry by more than 75 per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he shall rebut such presumption of fraudulent intent by sufficient evidence. The forfeiture provided for in this section shall apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles in each invoice which are under-valued. * * *"

[1, 2] Conceding for the purposes of argument only that the slight variations between three items of laces contained in both of Brantvogel's invoices of January 12 and 17 showed that the invoice of January 12 was fraudulent, still in our opinion Cobden & Co. did not accept the invoice of January 12 within the meaning of subsection H, but, on the contrary, amended it under subsection I, so as to make it conform to the higher values which the General Appraiser had fixed in prior shipments of similar articles. Therefore neither the consignor nor the consignee entered or attempted to enter the merchandise by means of a fraudulent invoice, and the case should not be forfeited under subsection H. Nor should it be forfeited under subsection I because the examiner appraised the merchandise at the amended values so that the appraised values did not exceed the declared values by more than 75 per cent.

We cannot agree with the government's contention that the right given the consignee to raise the values at the time of entry and before the merchandise or invoice has come under the observation of the appraiser is intended only to protect him from paying under subsection I the additional duties on any advance by the appraiser over the invoice values or the value of the merchandise under subsection H or from fine and imprisonment under subsection G (section 5524). The provision in our opinion also protects the consignor against forfeiture of his goods.

The decree is affirmed.